IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIK GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. _____ |
| EL DORADO MEXICAN RESTAURANT | ) | |
| INC. AND BRIXMOR HOLDINGS 12 | ) | |
| SPE LLC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendants, EL DORADO MEXICAN RESTAURANT, INC. and BRIXMOR HOLDINGS 12 SPE LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181, *et seq*., based upon Defendants' EL DORADO MEXICAN RESTAURANT, INC. and BRIXMOR HOLDINGS 12 SPE LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

1

## PARTIES

2.      Plaintiff ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.       Plaintiff is disabled as defined by the ADA, and is required to traverse in a wheelchair, is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

4.      Plaintiff uses a wheelchair for mobility purposes.

5.      Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on the Property, including returning to El Dorado and the Property as soon as it is accessible ("Advocacy Purposes").

6.      Defendant EL DORADO MEXICAN RESTAURANT, INC. (hereinafter "EL DORADO") is a Texas corporation, and transacts business in the State of Texas and within this judicial district.

7.      EL DORADO is the lessee, sub-lessee, lessor and/or operator of the real

property and improvements that are the subject of this action.

8.    EL DORADO may be properly served with process via its registered agent for service, to wit:  Jamie M. Perez, Registered Agent, 1962 El Dorado Blvd., Houston, TX  77062.

9.    Defendant BRIXMOR HOLDINGS SPE, LLC (hereinafter "BRIXMOR HOLDINGS") is a Texas Limited Liability Partnership, and transacts business in the State of Texas and within this judicial district.

10.    BRIXMOR HOLDINGS is the owner and/or operator of the real property and improvements that El Dorado is situated in and is the subject of this action, referenced herein as the "Property."

11.    BRIXMOR HOLDINGS may be properly served with process via its registered agent for service, to wit:  Corporation Service Company, DBA CSC – Lawyers Inc., 211 E. 7th Street, Suite 620, Austin, TX  78707.

## FACTUAL ALLEGATIONS

12.    In or about August of 2017, Plaintiff was a customer at EL DORADO MEXICAN RESTAURANT, INC. and also attempted to utilize the restroom at El Dorado and the Property.  Plaintiff travels to the Property on a weekly as it is only .6 miles from his home.  After visiting El Dorado and seeing the numerous barriers to access, he was dissuaded from again patronizing the restaurant knowing the barriers to access were still there preventing him from full enjoyment of the restaurant.  Plaintiff liked the Mexican food at El Dorado and would return when the barriers are removed.

3

13.     Plaintiff lives .6 miles from El Dorado and the Property.

14.     Plaintiff's access to the businesses located at 1962 El Dorado Blvd., Houston, TX    77062, Harris County Property Appraiser's account number 1145400000001 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of these disabilities, and will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations which exist at El Dorado and the Property, including those set forth in this Complaint.

15.     Plaintiff has visited El Dorado at least once before and the Property many times (more than three) before as a customer and advocate for the disabled.  Plaintiff intends on revisiting El Dorado and the Property within six months or sooner, as soon as the barriers to access detailed in this Complaint are removed and El Dorado and the Property are accessible again.  The purpose of the revisit is to be a regular customer, to determine if and when El Dorado and the Property are made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

16.     Plaintiff intends on revisit El Dorado and the Property to purchase goods and/or services as a regular customer living less than a mile from the Property as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17.     In this instance, Plaintiff travelled to El Dorado and and Property as a customer and as an independent advocate for the disabled, encountered the barriers to access at El Dorado and Property detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access.

<u>COUNT I</u>
<u>VIOLATIONS OF THE ADA AND ADAAG</u>

18.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*.

19.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

20.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

21.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA.

22.     The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181; 28 C.F.R. §36.508(a).

23.     El Dorado is a public accommodation and service establishment.

24.     The Property is a public accommodation and service establishment.

6

25.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA. 29 C.F.R. Part 36.

26.     Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 1281, *et seq*., and 28 C.F.R. §36.508(a).

27.     El Dorado  must be, but is not, in compliance with the ADA and ADAAG.

28.     The Property must be, but is not, in compliance with the ADA and ADAAG.

29.      Plaintiff has attempted to, and has to the extent possible, accessed El Dorado and the Property in his capacity as a customer of El Dorado and the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities due to the physical barriers to access, dangerous conditions and ADA violations that exist at El Dorado and the Property that preclude and/or limit his access to El Dorado and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Plaintiff intends to visit El Dorado and the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at El Dorado and the Property, but will be unable to fully do so

because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at El Dorado and the Property that preclude and/or limit his access to El Dorado and the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Defendants have discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of El Dorado and the Property, as prohibited by, and by failing to remove architectural barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv), and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at El Dorado and the Property, including those specifically set forth herein, and make El Dorado and the Property accessible to and usable by persons with disabilities, including Plaintiff.

32.     Defendants have discriminated against Plaintiff by failing to comply with the above requirements.

33.     A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that preclude and/or limit Plaintiff's ability (because of his disability) to access El Dorado and the Property and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of El Dorado and the Property, include, but are not limited to:

## ACCESSIBLE ELEMENTS

(i)     There is an excessive 1-inch vertical rise along the accessible route near Unit 1956 in violation of Section 303.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

(ii)    Between the column and RX walkup window for Kroger, the accessible route has clear widths below the minimum 36 (thirty-six) inch requirement, due to the placement of columns, as required by Section 403.5.1 of the 2010 ADAAG standards. This violation blocks the accessible route and made it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(iii)   Due to the lack of a 36 inch clear accessible route between the column and RX walkup window for Kroger, the Property lacks an exterior accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of section 206.2.2 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access public features of the Property.

(iv)    Due to items for sale and service in front of the Kroger store, and the storage of shopping carts within the accessible route in front of the Kroger store, the Property lacks an exterior accessible route connecting accessible

facilities, accessible elements and/or accessible spaces of the Property in violation of section 206.2.2 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access public features of the Property.

(v)     Due to policy decisions on where to place items for sale and service, there are publicly accessible areas of the Property in front of Kroger having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(vi)    Units 1956, 1958, 1934, 1932, 1930 and 1924 all have a doorway threshold with a vertical rise in excess of ½ (one half) inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(vii)   The interior of Unit 1928 has sales and services counters lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the sales and service counter exceed 36 (thirty-six) inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at Unit 1928.

(viii)  The Property has an accessible ramp near the Redbox dispenser machine in front of Kroger with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(ix)   The Property has an accessible ramp near the Redbox dispenser machine in front of Kroger that lacks a clear landing at the top of the ramp due to a policy of placing objects like a Red Box DVD dispenser and items for sale on display (KROGER) with less than 36 inch level clearance from the top of the accessible ramp, in violation of section 406.4 of the 2010 ADAAG Standards.

(x)    The Property has an accessible ramp leading to the entrance doors of the Kroger, this accessible curb ramp lacks a 36-inch level clearance from the top of the accessible ramp, in violation of section 406.4 of the 2010 ADAAG Standards.

(xi)   The interior of Unit 1928 has walking surfaces lacking a 36 (thirty-six) inch clear width in violation of Section 403.5.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to properly utilize public features at Unit 1928.

(xii)  Due to the proximity of an adjacent column, the door to the accessible entrance of Unit 1924 lacks a proper minimum maneuvering clearance in violation of Section 404.2.4 of the 2010 ADAAG standards.  This violation

11

made it difficult and dangerous for Plaintiff to access the interior of Unit 1924.

(xiii)   The interior of Unit 1962 (El Dorado) has a bar lacking any portion of the counter that has a maximum height of 34 (thirty-four) inches from the finished floor in violation of Section 902.3 of the 2010 ADAAG standards, all portions of the bar exceed 34 (thirty-four) inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at Unit 1962.

(xiv)   The door leading to the restroom area of Unit 1962 (El Dorado)  lacks proper door hardware in violation of Section 404.2.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff to utilize the restroom facilities.

(xv)   The Property lacks an accessible route from the sidewalk to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

(xvi)   The ground surfaces of the accessible route near the Redbox kiosk located in front of Kroger have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Section 302 and 303 of the 2010 ADAAG

standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

(xvii)  Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

## RESTROOMS IN EL DORADO (Unit 1962)

(i)  The restroom lacks restroom signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This made it difficult for Plaintiff to locate accessible restroom facilities.

(ii)  The restrooms lack proper door hardware in violation of Section 404.2.7 of the 2010 ADAAG standards. This made it difficult for Plaintiff to utilize the restroom facilities.

(iii)  The door exiting the restroom lacks a proper minimum maneuvering clearance in violation of Section 404.2.4 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(iv)  The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is too short. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(v)    Restrooms have a vanity sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(vi)   The paper towel dispenser in the restroom is located outside the prescribed vertical reach ranges set forth in Section 308.2.1 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(vii)  The soap dispenser in the restroom is located outside the prescribed vertical reach ranges set forth in Section 308.2.1 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

(viii) The mirror in the bathrooms exceeds the maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This violation made it difficult for the Plaintiff to properly utilize public features of the restroom.

34.    The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at El Dorado and the Property.

35.    Plaintiff requires an inspection of El Dorado and the Property in order to determine all of the discriminatory acts violating the ADA.

36.    All of the above violations are readily achievable to modify in order to bring El Dorado and the Property into compliance with the ADA.

37.    The removal of the physical barriers and dangerous conditions present at El

Dorado and the Property is readily achievable because the nature and cost of the modifications are relatively low and the Defendant has the financial resources to make the necessary modifications.

38.    Upon information and good-faith belief, El Dorado and the Property have been altered since 2010.

39.    In instances where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 33 can be applied to the 1991 ADAAG standards.

40.    Plaintiff has attempted to gain access to El Dorado and the Property in his capacity as a customer, but because of his disability has been denied access to, and has been denied the benefits of services, programs and activities of El Dorado and the Property, and has otherwise been discriminated against and damaged by Defendants, because of the physical barriers, dangerous conditions and ADA violations set forth above, and expect to be discriminated against in the near future by Defendants because of Plaintiff's disabilities, unless and until Defendants are compelled to remove the unlawful barriers and conditions and comply with the ADA.

41.    The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense.   42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. §36.304.

42.    Plaintiff is without adequate remedy at law, is suffering irreparable harm,

and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions and ADA violations that exist at El Dorado and the Property, including those set forth herein. The relief requested serves the public interest, and the benefit to Plaintiff and the public far outweighs any detriment to Defendants.

43.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses from Defendants pursuant to 42 U.S.C. §§ 12205 and 12117, and Plaintiff is entitled to attorney's fees, costs, and expenses from Defendants.

44.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject El Dorado and the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find EL DORADO MEXICAN RESTAURANT, INC. in violation of the ADA and ADAAG;

(b)     That the Court find BRIXMOR HOLDINGS 12 SPE LLC in violation of the ADA and ADAAG;

(c)     That the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices;

(d)     That the Court issue an Order requiring Defendants to (i) remove the

physical barriers to access and (ii) alter the subject El Dorado and the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(e)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(f)     That the Court grant such further relief as just and equitable in light of the circumstances.

Dated: September 12, 2018.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
*Attorney-in-Charge for Plaintiff*
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
21301 Powerline Road
Suite 106
Boca Raton, FL 33433
Tele: (561) 807-7388
Email: schapiro@schapirolawgroup.com